UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TIMMIE L. HAYNES,

                Plaintiff,

        v.

**DECISION AND ORDER**
10-CV-224A

DAVID ZAPOROWSKI et al.,

                Defendants.

## I.    INTRODUCTION

Pending before the Court are motions by individual defendants David Zaporowski, Bobbi Huwyler, Jenny L. Welenta, and Roberta Kane ("defendants")[1] to set aside any entry of default filed against them and to dismiss the complaint filed by *pro se* plaintiff Timmie L. Haynes. Defendants bring their motions under Rules 55(c) and 12(b) of the Federal Rules of Civil Procedure ("FRCP"). Defendants' motions have the same theme: Service of process as against each of them was deficient, meaning that any default that they incurred should be set aside and that the Court should dismiss them from this case under FRCP

---

[1] There are two other defendants in this case, the New York State Division of Parole and "Supervisors of David Zaporowski." Plaintiff has not filed proof of service on these defendants, but the Court will include them in its collective treatment of the "defendants" because the same analysis affecting the individual defendants affects them equally.

12(b)(5). For the reasons below, the Court will set aside any default against any defendant and will direct plaintiff to file an amended complaint addressing its concerns about legal sufficiency under FRCP 12(b)(6).

**II.    BACKGROUND**

This case concerns three searches that defendants conducted of plaintiff's apartment after his state parole was revoked on July 3, 2008. The papers available in the docket do not explain why the revocation occurred or what plaintiff's current parole or custody status is, though plaintiff appears not to dispute that inspection of his residence was a condition of his parole. Plaintiff nonetheless alleges that, after his parole was revoked, defendants searched his apartment three times, with his landlord, defendant Huwyler, providing access. The first two searches on July 9 and 31, 2008, appear to have been conducted by defendant Zaporowski without a warrant. The third search in September 2008 appears to have been conducted by defendants Welenta and Kane with a warrant. Though it never says so directly, the complaint implies that something about the first two searches prompted the third.

In response to the three searches of his apartment, plaintiff filed his complaint on March 17, 2010. The complaint asserts 11 different claims, each claim being against a different combination of defendants. What all of plaintiff's claims ultimately have in common, however, is his assertion that the first two searches, and thus the third, were illegal because they occurred under false

pretenses. Specifically, plaintiff alleges explicitly or implicitly in all 11 claims in his complaint that defendants had no authority to conduct any searches because plaintiff's parole status had been revoked before the first search occurred. Without parole status, according to plaintiff, defendants had no authority to conduct searches incident to the conditions of parole to which plaintiff agreed.

On March 30, 2010, plaintiff filed certificates of service on the individual defendants. According to these certificates, plaintiff served defendant Huwyler on March 18, 2010 by leaving a copy of the summons and complaint at her residence with her daughter.[2] Plaintiff served the other three individual defendants on March 18, 2010 by leaving a copy of the summons and complaint with whom he described as receptionists at their respective offices. Taking the certificates of service at face value, defendants Zaporowski and Huwyler had until April 8, 2010 to answer or otherwise to respond to the complaint, pursuant to FRCP 12(a)(1)(A)(i).[3] Neither of those defendants did so. On April 8, 2010, plaintiff filed a request for an entry of default against all defendants with the Clerk

---

[2] Factual denials aside, this method of service would at least appear facially adequate under FRCP 4(e)(2)(B), except that the Court does not know whether Ms. Huwyler's daughter is "of suitable age and discretion." *Id.*

[3] Under either FRCP 12(a)(2) or (a)(3), defendants Welenta and Kane never ran out of time because plaintiff never served the United States Attorney. The Court takes judicial notice that the office of the United States Attorney for this District is located at 138 Delaware Avenue in Buffalo.

3

of the Court. The Clerk of the Court filed an entry of default against defendants Zaporowski and Huwyler on April 19, 2010.

On April 19, 2010, the same day when the Clerk of the Court filed an entry of default in this case, defendant Zaporowski filed a motion to set aside the default against him and to dismiss the case under FRCP 12(b)(5) for insufficient service of process. In support of his motion, defendant Zaporowski denies that plaintiff served either him or his office receptionist. In response, plaintiff asserts that service on this defendant occurred as described in the certificate of service.

Also on April 19, 2010, defendants Welenta and Kane filed their own motion to set aside default to the extent necessary, and to dismiss under FRCP 12(b)(5) for insufficient service of process. In support of their motion, these defendants assert that plaintiff never served the United States Attorney as is required under FRCP 4(i)(3). In his response to this motion, plaintiff acknowledges the lack of service on the United States Attorney. Plaintiff concludes his response by asking that default against these defendants be set aside and that these defendants be permitted to answer.

On July 7, 2010, defendant Huwyler filed her own motion to set aside default and to dismiss under FRCP 12(b)(5) for insufficient service of process. In support of her motion, defendant Huwyler asserts in somewhat conclusory fashion that she, too, was not served properly in this case. Defendant Huwyler also was the only defendant to request dismissal under FRCP 12(b)(6), claiming

4

that plaintiff's lawsuit is frivolous. In response, plaintiff claims that defendant Huwyler did not file her motions timely and that he now is entitled to $10,800,350 and all of her assets, including any future retirement income and 401(k) accounts.

## III. DISCUSSION

### A. Standard for Considering *Pro Se* Filings

"As an initial matter, the Court is mindful that Plaintiff[] [is] proceeding *pro se*, and that [his] submissions should thus be held to less stringent standards than formal pleadings drafted by lawyers. Moreover, when plaintiffs bring a case *pro se*, the Court must construe their pleadings liberally and should interpret them to raise the strongest arguments that they suggest. Still, *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Rotblut v. Ben Hur Moving & Storage, Inc.*, 585 F. Supp. 2d 557, 559 (S.D.N.Y. 2008) (internal quotation marks and citations omitted). The Court will assess the pending motions and plaintiff's responses to them in this context.

### B. Relief from Default

The Court first will assess whether it should relieve defendants Zaporowski and Huwyler from the entry of default filed against them on April 19, 2010. "[W]e have established three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment. These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is

presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (citations omitted). Here, the defendants in default have submitted a plausible argument that they never received appropriate service of process. Defendant Huwyler is entitled to particular consideration of that argument because she, like plaintiff, is proceeding *pro se*. Both defendants thus have fulfilled the first criterion. Setting aside the default would not prejudice plaintiff in any way because discovery never began and because no claim or argument from plaintiff would have to be modified in response. These defendants thus have met the second criterion. As for the third criterion, "[a] defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense. The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.* at 98 (citations omitted); *accord State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004) (citing *Enron*). The argument from both defendants that they received insufficient service of process would, if true, require dismissal of plaintiff's complaint with possible leave to refile and to serve again. Additionally, defendant Huwyler's argument that plaintiff's lawsuit is frivolous is conclusory as written, but the Court will construe this *pro se* argument liberally as raising the same concern that the Court will explain below. Under these circumstances, the defendants currently in default have met all of the *Enron* criteria, and the Court will set aside the default

against them. The Court, correspondingly, will deny plaintiff's motions for a final entry of default, an order of seizure, and an order of settlement (Dkt. Nos. 26, 27).

### C. Failure to State a Claim Upon Which Relief Can Be Granted

#### 1. *Authority to Review* Sua Sponte

Although every defendant has asserted insufficient service of process under FRCP 12(b)(5), the Court is more concerned about the legal sufficiency of plaintiff's claims and will review them under FRCP 12(b)(6). Even though only defendant Huwyler formally asked for this type of relief, the Court has the authority to conduct this analysis *sua sponte* to determine whether further briefing from the parties is necessary. *See Leonhard v. U.S.*, 633 F.2d 599, 609 n.11 (2d Cir. 1980) ("The district court has the power to dismiss a complaint sua sponte for failure to state a claim.") (citations omitted).

#### 2. *Searches Incident to Parole Violations*

"[A] parolee's constitutional right to be secure against unreasonable searches and seizures is not violated when his apartment is searched, without a search warrant, by his parole officer if the latter's conduct is rationally and reasonably related to the performance of his duty as a parole officer." *People v. Huntley*, 371 N.E.2d 794, 796 (N.Y. 1977). "We note that the parole officer's duty has two, sometimes potentially inconsistent aspects: he has an obligation to detect and to prevent parole violations for the protection of the public from the commission of further crimes; he also has a responsibility to the parolee to

7

prevent violations of parole and to assist him to a proper reintegration into his community. Thus, the parole officer's responsibility to the parolee might be expected in some instances to warrant procedures which would not be reasonable if the officer were acting to discharge his obligation to the public only." *Id.* at 797; *accord People v. Johnson*, 472 N.E.2d 1029, 1030 (N.Y. 1984) ("[I]t cannot be said that the trial court erred, as a matter of law, in concluding that the search of the defendant's apartment by his parole officer, with police assistance, after his arrest on the parole warrant was in furtherance of parole purposes and related to his duty as a parole officer.") (citing *Huntley*).

How the New York Court of Appeals has interpreted the state's parole program affects this case because "[w]e must . . . assess New York's search regulations for parolees as they have been interpreted by state corrections officials and state courts, and, using this interpretation, we must determine whether the special needs attendant to the operation of New York's parole system justify their departure from traditional Fourth Amendment principles . . . . The New York Court of Appeals has explained that whether a parole search was unreasonable and thus prohibited by constitutional proscription must turn on whether the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty. On the facts before us, we find no evidence that either the New York State rules specified in *Huntley*, or the searches conducted in this case, are inconsistent with the Fourth Amendment."

*U.S. v. Grimes*, 225 F.3d 254, 258–59 (2d Cir. 2000) (internal quotation marks, alterations, and citations omitted).

In this context, the Court needs further briefing from the parties because it is concerned that plaintiff's claims may fail as a matter of law. Assuming every fact in plaintiff's complaint to be true, as the Court must do when assessing any motion under FRCP 12(b)(6), all 11 claims in the complaint ultimately stem from the first search that his parole officer conducted of his apartment after he violated parole. Although plaintiff does not explain in his complaint how he violated parole, his concession of a violation may have made the subsequent searches of his apartment reasonable under *Huntley* and *Johnson*. In fact, plaintiff never contends that the particular way in which all three searches of his apartment were conducted violated the standards established in *Huntley* and *Johnson*. Rather, plaintiff sets forth only one basis for concluding in summary fashion that the searches were illegal: His parole officer had no authority to conduct a parole search of his apartment because his revocation meant that he had no parole status at the time of the first search. This basis, in itself and without context, is legally meaningless under *Huntley* and *Johnson*.

That said, the Court is mindful that plaintiff is proceeding *pro se*. Out of an abundance of caution, the Court will give plaintiff an opportunity to address its concerns about the legal sufficiency of his claims. No later than October 22, 2010, plaintiff must file and serve an amended complaint that addresses the

Court's concerns and explains what exactly was illegal about the searches of his apartment, other than their occurrence after he violated parole. Plaintiff also should explain why he believes that warrants were necessary for the first two searches in light of *Huntley* and *Johnson*. No later than November 22, 2010, each defendant shall answer or otherwise respond to the amended complaint; any motion practice filed in lieu of an answer shall address the concerns that the Court raised in this Decision and Order.

## IV. CONCLUSION

For all of the foregoing reasons, the Court orders as follows:

1) With respect to defendant Zaporowski's motions to set aside default and to dismiss under FRCP 12(b)(5) (Dkt. No. 6), the Court grants the motion to set aside default and hereby vacates the entry of default (Dkt. No. 5) as against this defendant. The Court denies the motion to dismiss without prejudice as moot, given the direction to plaintiff to address its concerns under FRCP 12(b)(6).

2) With respect to defendants Welenta and Kane's motions to set aside default and to dismiss under FRCP 12(b)(5) (Dkt. No. 9), the Court denies them without prejudice as moot, given that these defendants are not in default (*see* Dkt. Minute Entry of 4/19/2010) and given the direction to plaintiff to address its concerns under FRCP 12(b)(6).

3) With respect to defendant Huwyler's motions to set aside default and to dismiss under FRCP 12(b)(5) and 12(b)(6) (Dkt. No. 25), the Court grants the

10

motion to set aside default and hereby vacates the entry of default (Dkt. No. 5) as against this defendant. The Court denies the 12(b)(5) motion without prejudice as moot. The Court will hold the 12(b)(6) motion in abeyance pending further submissions from the parties.

4) No later than **October 22, 2010**, plaintiff must file and serve an amended complaint that addresses the Court's concerns as explained above. No later than **November 22, 2010**, each defendant shall answer or otherwise respond to the amended complaint.

5) The Court denies plaintiff's motions for a final entry of default, an order of seizure, and an order of settlement (Dkt. Nos. 26, 27).

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: September 15, 2010